### 7704

#### OHIO POTTERY AND GLASS CO. v. TALBERT.

PRINCIPAL AND AGENT—VERDICT—ISSUES.—From the evidence here the jury may have inferred that the defendant bought the goods from the salesman without notice that he was not the owner, or that the owner accepted the sale made by him in his name and it was error to direct a verdict for plaintiff on the ground that an agent authorized to sell has no implied authority to collect.

MR. JUSTICE WOODS *dissents.*

Before SHIPP J. Greenwood Fall Term 1909.   Reversed.

Action by Ohio Pottery and Glass Co. against B. C. Talbert.   From judgment for plaintiff, defendant appeals.

*Mr. D. H. Magill* for appellant, cites: *Authority of agent may be inferred from circumstances:* 7 Am. & Eng. Ann. Cas. 1035; 10 Ency. Ev. 8, 11, 24; 55 S. C. 568; 74 S. C. 227; 31 Cyc. 1237; 2 Tread. 821; 55 S. C. 568; 31 Cyc. 1331-2; 67 S. C. 391; 31 Cyc. 1360; 15 S. E. 459; 53 Vt. 402; 119 Mass. 140.   *Scope of agent and his powers are for jury:* 57 S. C. 347; 22 Ency. 519-20; 47 S. C. 148; Meach. on Ag. sec. 787; 14 Am. R. 289; 2 Black. 372; 73 S. C. 57; 60 S. C. 301.

*Messrs. Giles* and *Ouzts,* contra, cite: *Burden is on defendant to show authority of agent to collect:* 95 Pac. 1112; 10 Rich. 332; 27 S. C. 134; 52 S. C. 412; 71 S. C. 438.

October 29, 1910.   The opinion of the Court was delivered by

MR. CHIEF JUSTICE JONES.   The plaintiff, Abe Bloch and Ike Bloch, as a partnership under the name of Ohio Pottery & Glass Company, sued defendant for $111.02 for a bill of goods sold and delivered to defendant.   The defendant alleged in defense that he had made payment to A. E. Bayol, who sold him the goods.   The Court held that there was no evidence tending to show that Bayol had real or apparent authority to collect, and therefore directed a verdict in favor of plaintiff for $93.53 after deducting $17.49 from the amount claimed for freight, packing and draying.

The only question in the case is whether there was a *scintilla* of evidence which should have required the question of Bayol's authority to collect to be submitted to the jury.

The testimony for the plaintiff was to the effect that they were dealers in queensware, glassware etc. at Cleveland, Ohio, and had employed A. E. Bayol as a salesman on commission to sell their wares in South Carolina, that this agent had no authority to collect, that in September, 1907, they received an order through Bayol signed by defendant in these words:

"9—9 No. 52, Salesman A. E. Bayol.

Sold to B. C. Talbert, Troy P. O. South Carolina, R. F. D. No. 2.   Ship by C. & W. C. Ry. to Troy, South Carolina. Terms 1—30, 1—60, 1—3 90.

¼ C. Special Gold, List Price $186.69.   Net price $46.65.

¼ C. Everybody's Asst. (White only) List Price $111.40, net price $22.50.

½ C. Glass Southern Assortment.   List price $69.00, net price $34.50.

I hereby acknowledge that I have given orders for the above goods and will claim as my property as soon as the B. of L. is issued by the Ry. Co.   B. C. Talbert.   Regular charge for package."

Plaintiff Ike Bloch testified that the order was accepted by them and the goods shipped as instructed on September 23, 1907, that the goods were delivered, that on January 14, 1908, in reply to plaintiff's letter of the 11th requesting payment, defendant wrote plaintiff stating that he had paid the bill in full to plaintiff's agent. This plaintiff further testified that no payment had ever been received by them.

The defendant testified that he never had any dealings with the Ohio Pottery & Glass Company, individually, or with any of the firm. That he made a contract with A. E. Bayol in words like the order introduced in evidence by plaintiff except that the word *"salesman"* did not appear thereon and that the words "regular charge for package" were not thereon, that he knew nothing about any connection between plaintiffs and Bayol when he bought the goods and signed the order, that he was never notified in any way not to pay to Bayol, that on December 17, 1907, at his request Bayol came to his store and helped him to mark up the goods, that on that day payment was made to Bayol on presentation of bill and receipt given by him, bill and receipt as follows:

"Ohio Pottery & Glass Co. Queensware, Chinaware & Glass. 628 Superior Street, Cleveland, Ohio, 9-23-07. Sold to B. C. Talbert, Troy, S. C. Terms 30-60-90.

| | |
|---|---|
| ¼ Special Gold Asst.................. | $46.57 |
| ¼ Everybody's Asst.................. | 27.85 |
| ½ Southern Glass Asst............... | 34.50 |
| P. & D...................... | 2.00 |
| | $111.02 |

Freight and P. & D. $17.49 allowed off of bill, leaving $93.53.

Paid A. E. Bayol, for Bloch Queensware Co., Dec. 17, 1907. Positively no allowance for breakage."

Defendant testified: "When he presented the bill I paid him as I was accustomed to paying these traveling people and got that receipt." Defendant exhibited a letter dated December 4, 1907, signed by Ohio Pottery & Glass Co. in reply to a letter from defendant to them concerning the goods, some of which had not then arrived, in which letter plaintiff stated "Your freight bill accompanying your check with balance of these goods will be accepted as cash."

On cross-examination defendant testified: "I got the goods that I ordered. Got them from the depot at Troy, the bill heads were marked Ohio Pottery and Glass Co. That is the contract that I signed that Mr. Bayol drew up. I got an invoice similar to this, and the amount was $111.02.

"The Ohio Pottery and Glass Company never authorized me to pay Mr. Bayol. There was nothing said about packing and drayage. Mr. Bayol knocked that off. I never sent them any check. I paid Mr. Bayol. I paid him because he was there and it suited me just as well to pay that time as any other time. I only knew he took the order, and I knew they shipped the goods in accordance with the order. I didn't know whether he was selling on commision or salary, or how. I didn't know whether he was connected with the concern or not. I paid him because I had made the contract with him. If he had not come I would have sent them a check.

"Redirect examination. There was no statement on the invoices, letters or papers received from them saying I should not pay Mr. Bayol, or anything of that kind on any of them. There was never any showing of that kind made until after I had paid the account. Never anything said about who to pay until after I had paid the account."

We have thus fully stated the testimony to vindicate our conclusion that it was error not to submit the case to the jury.

There is much authority for the proposition that a drummer or traveling salesman who solicits orders by samples

and is not entrusted with the possession of the property offered for sale has no implied authority to collect.   6 Am. & Eng. Ency. Law (2nd Ed.) 225, and cases cited in the notes.    But the theory of the case as presented by defendant's evidence is that this was not certainly a sale by a traveling salesman for a disclosed principal, but may have been a sale by Bayol as the real seller, afterwards adopted and accepted by plaintiffs subject to all the implications involved in the original contract.    According to defendant's testimony the contract was made with Bayol without knowledge that he represented any other than himself and the written instrument specified that the seller was Bayol.    The implication from said contract is that payment was to be made to the seller Bayol, and if plaintiffs accepted or ratified such contract, without informing plaintiffs to the contrary, the implication is not that Bayol had no authority to collect, but just the contrary.    The jury may have concluded that the circumstances required that plaintiff, in accepting or ratifying Bayol's contract, should have informed defendant, if there was any intention to restrict Bayol's authority to collect.

The judgment of the Circuit Court is reversed and the case remanded for new trial.

MR. JUSTICE WOODS, *dissenting.*    I dissent.    Defendant's correspondence with the plaintiff and the terms of the receipt tendered him by Bayol made it manifest to defendant that the goods were really bought by him from the plaintiff, and that Bayol was only its selling agent.    Under this proof, in the absence of any evidence that Bayol had any authority to collect, it seems to me that the receipt was not binding on the plaintiff, and that the Circuit Judge was right in directing a verdict in its favor.    Authority to collect is not implied from authority to make a contract of sale.    31 Cyc. 1359 ; 6 A. & E. Ency. 225 ; Story on Agency, Sec. 98.